Nott, Ch. J.,
delivered the opinion of the court:
During the stormy vicissitudes of the civil war and in consequence of many hard-fought battles and appalling casualties it frequently happened that officers had to be assigned to commands above their rank. Such necessities of command may occur in any war. Early in the war with Spain Congress, by the Act 26th April, 1898 (30 Stat. L., p. 364, sec. 7), made this enactment:
“That in time of war every officer serving with troops operating against an enemy who shall exercise, under assign- • ment in orders issued by competent authority, a command above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command exercised: Provided, That a rate of pay exceeding that of a brigadier-general shall not be paid in any case by reason of such assignment.”
This is a statute which must be interpreted by referring to the facts and circumstances which have existed in preceding “times of war,” and to the military usages which, unchanged, will continue to exist in subsequent wars. There always have been exigencies, such as battles and unexpected combinations, in which a body of troops is left or assembled without a designated commanding officer. In such cases the command devolves upon the officer highest in rank or senior in commission. It is his duty eo instanti to assume command. Such commands are temporary in their nature, continuing only as long as the circumstances may require. They do not need an order “ by competent authority” to create them or to dissolve them.
*692 There are also in every army permanent organizations, such as regiments and companies. A regiment is the unit of an army, and a company is the unit of a regiment. Within these units the same principle prevails. If a colonel is wounded or assigned to other duty, the lieutenant-colonel assumes command; if the lieutenant-colonel is incapacitated, the senior major takes his place; if a captain is absent, his first lieutenant becomes commanding officer of the company; if the first lieutenant can not act, the second lieutenant assumes command. Conversely, when the colonel returns to the regiment the lieutenant-colonel ceases to command; when the captain is again present for duty the lieutenant no longer acts as captain. Moreover, the duties of these officers extend beyond the assemblage of troops for battle or drill or parade to the business of the army — to the procurement and distribution of subsistence, of clothing, of pay, of camp equipage, of arms, ammunition, and hospital supplies, of horses, forage, and transportation. But in none of these cases is an “ assignment in order’s issued by competent authority ” necessary. These additional duties are neither honors nor burdens placed upon the officers b3r competent authority; they are the ordinary incidental duties of military official life which go with each officer’s commission.
It seems to the court incontrovertible that the words ‘ ‘ under assignment in orders issued by competent authority ” constitute the controlling limitation of the statute; and the limitation implies that the benefits of the statute extend only to cases where such an order is necessaiy to impose the burden of the higher command upon an officer. Where a colonel is assigned to the command-of a brigade, or where a lieutenant-colonel is assigned to the command of another regiment than his own, there will be a case coming within the intent of the statute.
It is also to be said that the term “command” in the statute refers not to the commander but to the commanded — not to rank or grade or the giving of orders, but to organized bodies of troops whose commanding- officers have a certain rate of pay regulated by law. The command of a brigadier is his brigade; the command of a colonel is his regiment; the command of a captain is his company. A lieutenant-colonel has *693 no command; that is to say, he commands no integral part of a regiment. The commanders of companies do not report to the commanders of battalions, but direct to the regimental headquarters. The term “battalion” is merely tactical, and the assignment of command to field officers is merely to designate their places in the field. When a regiment is not in line of battle a lieutenant-colonel or major has neither command nor designated official duties as such.
It seems manifest to the court that the order of the corps commander, which is the basis of this case, was not issued for the purpose of assigning the claimant to the command of the designated battalion of his regiment, but for the purpose of securing to him the pay of a lieutenant-colonel. When the order was issued, in August, 1898, the claimant had been for some time in command of the battalion. This action of the commanding general was unauthorized by law. It was not within the province of his duties and responsibilities to put up one officer’s pay or to keep another’s down. What the law contemplated his doing was to make necessary and not gratuitous assignments, and only such as would be for the good of the service and the vigorous prosecution of the war, leaving the matter of pay — which was.but an incident of an assignment — to those officers of the Government to whose charge and responsibility it is committed by law.
The judgment of the court is that the petition be dismissed.